IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
AKZENTA PANEELE + PROFILE GmbH,
                              *
     Plaintiffs,
                              *   CIVIL NO.: WDQ-05-3445
v.
                              *
UNILIN FLOORING N.C. LLC, ET AL.,
                              *
     Defendants
                              *

 *    *    *    *    *    *    *    *    *    *    *    *    *
```

Memorandum Opinion

Akzenta Paneele + Profile GmbH ("Akzenta") has filed suit
against Unilin Flooring N.C. LLC, Unilin Beheer B.V., Columbia
Flooring, BHK of America, Roesel-Heck Co., Inc., and CMH Flooring
Products (collectively "Unilin") for infringement of U.S. Patent
No. 6,804,926 (the "'926 patent") and U.S. Patent No. 7,065,935
(the "'935 patent").

Pending are Akzenta's motions to stay the litigation pending
reexamination of the patents by the United States Patent Office
(the "PTO") and to strike portions of Unilin's answer to
Akzenta's amended complaint. For the reasons discussed below
both motions will be denied.

I.   Background

On December 27, 2005 Akzenta filed a complaint against
Unilin alleging infringment of the '926 patent. Mem. Supp. Mot.

to Stay at 1.   The '926 patent issued on October 19, 2004 and claims priority to March 22, 2000.   *Id*. at 5-6.

Unilin filed an answer to the complaint asserting seven affirmative defenses, including noninfringement, invalidity and unenforceability.   Unilin also filed a counterclaim for declaratory judgment that the '926 patent was not infringed, is invalid and unenforceable.

On June 27, 2006, the PTO issued Akzenta's '935 patent. This subsequent patent is a continuation of the '926 patent and the two vary only in the scope of their claims.   Mem. Supp. Mot. to Stay at 2.   On August 18, 2006 this Court granted Akzenta's motion to file an amended complaint including the '935 patent. On August 31, 2006, Unilin filed an answer to this amended complaint and included, allegedly for the first time, allegations of inequitable conduct against the '926 and the '935 patents.

Unilin uncovered evidence and argued that Akzenta prosecuted the patents without disclosing certain information suggesting prior use bearing on patentability to the PTO.   Mem. Supp. Mot. to Stay at 3.   Based on this, Akzenta has since decided to submit the two patents at issue to the PTO for reexamination.   *Id*. at 5. The PTO has not yet decided whether it will engage in a full reexamination.

II.  Analysis

A.   Motion to Stay

     Akzenta has moved to stay the litigation pending reexamination of the patents by the PTO.  Akzenta has resubmitted its patents because of the potential prior art that Unilin identified as not considered by the PTO during the initial prosecution of the patents.  Akzenta argues that a stay would: 1) conserve judicial resources; and 2) not cause prejudice to Unilin.  In response, Unilin argues that: 1) the case is nearly trial-ready; 2) a stay would prejudice them; and 3) a stay would not simplify the issues for the court.

1.   Patent reexaminations by the PTO

     A reexamination is a proceeding conducted by the PTO to determine the validity of an existing patent based on the existence of prior art.  *See* 35 U.S.C. § 302.  Before conducting a full reexamination, the PTO first assesses whether the request for reexamination raises "a substantial new question of patentability affecting any claim of the patent concerned."  *Id.* at § 303(a).

     A reexamination, if granted, may result in: 1) a confirmation of the claims in whole; 2) a confirmation of the claims in an amended form; or 3) cancellation of the claims. *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D.

Ill. 1990).  Under the statutory framework, a reexamination cannot result in amended or new claims that enlarge the scope of a claim of the patent.  35 U.S.C. § 305.

It has recently been observed that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases.  *Telemac Corp. v. Teledigital, Inc.*, 2006 WL 2632560, at *2 (N.D. Ca. 2006); *see also IMAX Corp. v. In-three, Inc.*, 385 F.Supp.2d 1030, 1032 (C.D. Ca. 2005) (noting statistics indicating that 74% of reexaminations result in some change to the claims, whether by cancellation or alteration).

2.   The reexamination of the '926 and the '935 patents

Federal Rule of Civil Procedure 41(a) allows a plaintiff to voluntarily dismiss its claims without prejudice in certain circumstances.  The purpose of the rule is "to permit a disengagement of the parties at the behest of the plaintiff," but once the defendant has filed an answer or a motion for summary judgment, dismissal is subject to the discretion of the court. *Armstrong v. Frostie Co.*, 453 F.2d 914, 916 (4th Cir. 1971) (upholding the district court's decision to vacate the plaintiff's dismissal after noting that allowing dismissal would have increased the defendant's burden since an answer and a motion for summary judgment had already been filed).

4

While it reassesses the merits of its claims, Akzenta has moved not to dismiss its claims without prejudice, but to stay the proceedings.  Having reviewed cases discussing stays pending reexamination, this Court notes that they ordinarily involve reexaminations precipitated by parties *other* than the owner of the patent (usually the defendant).  *See e.g., St. Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F.Supp.2d 252, 252 (D. Mass. 2006); *IMAX*, 385 F.Supp.2d at 1032.  Here, interestingly, upon learning of potential prior art from the defendant as part of the answer to the amended complaint, Akzenta has decided to pursue reexamination of its own patent claims rather than to defend them in court.

In determining whether the Court has power to grant a stay, it is important to note that "Courts have inherent power to manage their dockets and stay proceedings . . . including the authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (4th Cir. 1988) (discussing the power of courts to stay proceedings pending reexamination but ultimately ruling that the Commissioner of Patents and Trademarks does not have the authority to stay a patent reexamination proceeding pending the outcome of a case in another district court).  The Court should consider the competing interests of the parties and in particular "a party must demonstrate a clear case of hardship if there is a

danger that the stay will damage the other party." *Saint-Gobain*, 436 F.Supp.2d at 253.

Specifically, Courts weigh three factors in determining whether to grant a stay pending patent reexamination by the PTO: 1) the stage of the proceedings; 2) whether a stay would unduly prejudice the nonmoving party; and 3) whether a stay would simplify issues and the trial of the case. *Telemac*, 2006 WL 2632560, at *3 (denying the motions to stay after discussing the factors); *In re Cygnus Telecommunications Tech., LLC*, 385 F.Supp.2d 1022, 1023 (N.D. Ca. 2005); *IMAX*, 385 F.Supp.2d at 1032.

a.   Stage of the Proceedings

In assessing the stage of the proceedings, Courts focus on whether a trial date has been set and the degree to which discovery has been completed. *See e.g.*, *Telemac*, 2006 WL 2632560, at *3.

In this case, a trial date has not been set and the parties disagree about the progress made in discovery. Akzenta argues that "[o]nly a small portion of the necessary discovery has been conducted in this case." Mem. Supp. Mot. to Stay at 2. On the other hand, Unilin argues that only two and a half weeks of discovery remain. Mem. Opp. Mot. to Stay at 7. In fact, Unilin also notes that Akzenta's current argument contradicts its earlier argument, made when adding the '935 patent to its

6

complaint, that little discovery would be needed.  *See also* Akzenta's Mem. Supp. Mot. to Strike at 1 (stating that the parties are late in the discovery process).  For its part, Akzenta notes that Unilin's current argument contradicts its earlier argument, made in opposing the addition of the '935 patent, that much discovery remains.  Evidently, the parties disagree about how much discovery has been conducted; accordingly, the Court finds that this factor does not weigh heavily for or against granting the stay.

b.   Prejudice to the non-moving party

Akzenta argues that a stay would not prejudice Unilin.  Mem. Supp. Mot. to Stay at 8.  Unilin responds, arguing that a stay pending reexamination would cause prejudice because it would: 1) increase their potential liability, and 2) place a cloud of uncertainty over their operations for the duration of the reexamination.  Mem. Opp. Mot. to Stay at 8-9.

The reexamination provision itself provides that such proceedings "will be conducted with special dispatch."  35 U.S.C. § 305.  District courts, however, have found that the average reexamination procedure lasts over a year and a half.  *IMAX,* 385 F.Supp.2d at 1032 (finding an average pendency of 21.5 months; relying on this and the other factors, the Court denied the motion to stay); *St. Gobain*, 436 F.Supp.2d at 253 (finding that the average reexamination takes 21 months but also noting that it

7

could take several years; the Court relied primarily on the risk of prejudice in denying the motion to stay); *see also In re Cygnus*, 385 F.Supp.2d at 1023 (noting that they generally take from 6 months to 3 years; the Court granted the motion to stay but noted that the reexamination had already been granted and was underway); *but see Enprotech*, 15 U.S.P.Q.2d at 1320 (stating, optimistically, that the reexamination process would take six to nine months; the Court denied the stay, but its decision relied primarily on the other factors).

If the Court grants the stay pending reexamination then the defendants would be forced to continue operating not knowing whether their activities will subject them to liability for patent infringement.  Here, Akzenta has only asked for a reexamination, the PTO must first grant that request and then must actually conduct the reexamination.  The *Saint-Gobain* Court noted that statistics indicate that the PTO grants 91% of the requests for reexamination.  *Saint-Gobain*, 385 F.Supp.2d at 1032. Since the reexamination process is at its beginning, Unilin would be faced with uncertainty for more than a year and a half.  In light of that uncertainty, Unilin would be compelled to make the choice between: 1) continuing to operate as it has and potentially increasing its liability, or 2) changing its operations and potentially finding out that the labor and cost of changing was not necessary.  The Court declines to leave the

infringement suit hanging over Unilin's operations.[1]

c.   Simplification

Akzenta argues that staying the litigation pending
reexamination will simplify the issues because reexamination will
provide the Court with the benefit of the expert view of the PTO.
Mem. Supp. Mot. to Stay at 7.  Indeed, since the PTO has
"expertise in deciding issues of patentability many courts have
preferred to postpone making final decisions on infringement
until the PTO rules on issues before it."  *Bausch & Lomb, Inc. v.
Alcon Labs., Inc.*, 914 F.Supp. 951, 953 (W.D.N.Y. 1996).  Courts
are not obliged to follow this logic, this factor may not be true
in particular cases or may be outweighed by other evidence
influencing the question of simplification.

As mentioned above, a reexamination can lead to one of
several results, it may eliminate trial of the issue (when the
claim is cancelled) or it may facilitate trial of the issue by
providing the court with the expert view of the PTO (when a claim
survives reexamination).  *Id.*

---

[1] The Court notes, however, that denying the stay may also
cause harm to Unilin.  If this Court first finds that the patent
is valid and that Unilin has infringed it and then orders that
Unilin pay damages to Akzenta, then Unilin would have a difficult
time recovering those damages if the PTO subsequently found the
patent invalid.  *See Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
914 F.Supp. 951, 952 (W.D.N.Y. 1996).  Should this occur the
Court could stay execution of the judgment pending the
reexamination.

A finding by this court that the patent is not invalid will not bind the PTO because each forum applies a different standard and considers different evidence. *Id*. at 952. A finding of invalidity by the PTO after a finding in favor of Akzenta by this Court, however, would represent a significant waste of time and resources. *Id*. at 953.

It is more likely, however, that the claims will not be totally cancelled, given the statistics cited above. As a result, even after reexamination, invalidity will continue to be an issue so a stay would not preserve many resources. Accordingly, this factor does not weigh heavily in favor of or against granting a stay.

The stage of the proceedings and the likelihood of simplification of trial issues do not weigh heavily for or against granting the stay. The likelihood of prejudice to Unilin, however, favors denying the stay. Moreover, Akzenta has not demonstrated that it will suffer any hardship without the stay in response to that risk of prejudice to Unilin. *See Saint-Gobain*, 436 F.Supp.2d at 253. Accordingly, this Court will deny Akzenta's motion for a stay.

B.   Motion to Strike

Akzenta has moved to strike Unilin's inequitable conduct affirmative defense and counterclaim, arguing that: 1) it should be stricken as a sanction under Rule 37(b)(2)(C) for Unilin's

alleged violation of the Court's scheduling orders; and 2)
Akzenta's amended complaint does not provide Unilin the latitude
necessary to include the inequitable conduct claim.  Unilin
counters, arguing that: 1) their answer was the first opportunity
to plead inequitable conduct as a defense to the '935 patent; 2)
Akzenta's amended complaint allowed Unilin to plead inequitable
conduct; and 3) the defendants could not plead inequitable
conduct until certain facts were confirmed.

On August 31, 2006, Unilin, without seeking leave of court,
included the additional affirmative defense and counterclaim of
inequitable conduct in its answer to Akzenta's amended complaint.
As Unilin's answer was an appropriate responsive pleading to
Akzenta's Court-allowed amended complaint, Unilin's inclusion of
additional affirmative defenses, even if against proper
procedure, does not warrant sanction.

It seems that "[n]o appellate court has squarely addressed
whether counterclaims filed in response to an amended complaint
. . . must be permitted as of right or only with leave of court."
*Elite Entertainment, Inc. v. Khela Brothers Entertainment*, 227
F.R.D. 444, 446 (E.D. Va. 2005).

Some district courts have "held that once a plaintiff amends
a complaint, the defendant always has a right to amend to bring
new counterclaims, without regard to the scope of the
amendments," while others have "held that an amended counterclaim

11

must be confined specifically to responses that are related to changes in the amended complaint." *Id*.  A more moderate view allows a party to file an amended response without leave "only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." *Id*.

As Unilin may file an amended answer in response to Akzenta's amended complaint, not all of Unilin's pleading related to inequitable conduct need be struck.  The inequitable conduct related to the '935 patent is in direct response to the amended complaint and will not be stricken.  The inequitable conduct related to the '926 patent, however, is not directly responsive to the changes in Akzenta's complaint.  To the extent Unilin wished to plead inequitable conduct with respect to the '926 patent, it should have followed appropriate procedure and sought leave of court to amend its answer.

Given the extremely close relationship between the two patents at issue[2] and the broad discretion this Court retains in granting leave to amend, however, it would unduly waste resources and time to require Unilin to seek such leave.  Moreover, the

---

[2] Akzenta has asserted that the two patents share a priority date and cover the same subject matter.  In addition, Akzenta has sought reexamination of both patents together based on the evidence related to the inequitable conduct claim.

same evidence will be used to argue inequitable conduct under

both patents and there is no evidence of deliberate, willful

delay.  In fact, evidence suggests that any delay was caused by

the time necessary to uncover facts Unilin felt necessary to its

claim.  Mem. Opp. Mot. to Strike at 8-9.

III. Conclusion

     For the reasons discussed above, Akzenta's motion for a stay

pending reexamination and motion to strike will be denied.


December 12, 2006                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge

13